## BEMISS *v.* HAWKINS et al.

The contract of sale requires a concurrence of will-both on the part of the vendor and vendee.

APPEAL from the District Court of Madison, *Curry*, J.  *Thomas*, for the plaintiff.  *T. P. Farrar*, for the defendants.  The judgment of the court was pronounced by

ROST. J.  On the 23d day of January, 1841, *Alfred Fowler* was arrested for debt, in the parish of Concordia, on the affidavit of one of the defendants, in conformity with the provisions of the act of 1828, which authorised that mode of proceeding, and made it incumbent upon the plaintiff to file, on the following day, the petition setting forth his cause of action.  With the consent of *Hawkins* and *Stansbury*, *Fowler* surrendered two slaves to the sheriff, to secure the debt, and was released.  On the same day *Fowler* sold to *V. T. Rodgers* these two slaves, with a number of others, by an act under private signature.  *John B. Bemiss*, the plaintiff in this suit, was a subscribing witness to that act.  *Fowler* subsequently went before a notary in the parish of West Feliciana, and there acknowledged his signature in presence of the said notary and of two witnesses.

On the 25th of January, 1841, *John B. Bemiss*, acting as the attorney in fact of *Fowler*, entered with *Hawkins* and *Stansbury* into an agreement, by which the two slaves surrendered by *Fowler* were to be delivered to the sheriff of the parish of Madison, and to be retained by the said sheriff till the amount of the indebtedness of *Fowler* to *Hawkins* and *Stansbury* should be ascertained, by arbitrators to be chosen by both parties.  The arbitration was to take place within sixty days from the date of the agreement; and, if it did not take place within that time, *Hawkins* and *Stansbury* were at liberty to proceed with their suit against *Fowler*, and the negroes were to be restored to the possession of the sheriff of the parish of Concordia.  On the 27th of January, *Bemiss* entered into another agreement, by which he was to keep the slaves in his own possession, and to be responsible to *Hawkins* and *Stansbury* for their forthcoming.

The arbitration did not take place within the time fixed, and *Hawkins* and *Stansbury* having failed to file their petition as required by the act of 1828, de-

prived themselves of the faculty, reserved to them by the agreement, of proceeding with their suit against *Fowler*. On the 31st of January, 1842, *Hawkins* and *Stansbury* proceeded by attachment against *Fowler*, in the parish of Madison, and one of the slaves in the possession of *Bemiss* was attached as the property of *Fowler*. Judgment was rendered in favor of the attaching creditors, and the slave attached having been seized and advertised to satisfy it, the plaintiff in this suit enjoined the proceedings, on the ground that he had purchased the slave from *Rodgers*, before the suing out of the attachment; that no property of *Fowler* had been attached; that the judgment rendered against him was an absolute nullity; and that, if it had been valid, the slave attached could not be sold to satisfy it. The court below perpetuated the injunction, and *Hawkins* and *Stansbury* appealed.

The sale from *Rodgers* to *Bemiss* is an act under private signature, which has never been recorded, and the appellants contend that it is without effect as to them.* This question is one of great difficulty, but we are of opinion that this case does not turn upon it.

The sale from *Fowler* to *Rodgers* was made on the very day on which *Fowler* gave the two slaves in pledge to *Hawkins* and *Stansbury*, and the plaintiff in this suit was a witness to the deed. *Rodgers* did not accept the sale, and so far from there having been a delivery of those two slaves to him, he was present when they were delivered by *Fowler*, as his own, to the sheriff, and suffered them to be represented as such.

From that time the plaintiff acted as counsel and agent of *Fowler*, and throughout the proceedings which took place continued to represent those slaves to the defendants as the property of his clients. Those representations are found in his receipt for the slaves, and in his agreement to submit the claims of the defendants to arbitration. On the 26th of March, 1841, he wrote to them, after stating that he was without advices from *Fowler* : "I shall, in the mean time, see that the negroes are safely kept to answer your claim, more positively, as I want whatever they may bring over paying you, myself. If your claim was a note, I should like to make an arrangement to take it, and then take the negroes."

Under this state of facts the conclusion is irresistible, that the sale from *Fowler* conveyed no title to the slave attached, which *Rodgers* himself could set up. The contract of sale requires the concurrence of the will of the seller and of that of the purchaser. But here neither existed, and we must hold the sale of the slave to have been a mere simulation. Its being acknowledged by the vendor, in the parish of West Feliciana, and recorded in the parish of St. Mary, cannot make it a real contract; and besides, the sale to the plaintiff is anterior in date to these proceedings. The line of conduct pursued by *Bemiss* induced the defendants to act, and procured the release of his clients from imprisonment. He could not, probably, under any circumstances, avail himself of an outstanding title, which he knew to exist at the time, and in the execution of which he appears to have acted as counsel. 1 Greenleaf, Evid. no. 27,

But we are of opinion that no outstanding title to the slave attached has been shown, and that the defendants are entitled to proceed under their execution.

It is therefore ordered that the judgment in this case be reversed; that the injunction be dissolved, with ten per cent interest on the amount enjoined; and

---

* This act purports to have been executed on the 9th of April, 1841.

BEMISS
v.
HAWKINS.

the defendants allowed to proceed under their execution. It is further ordered that the plaintiff pay the costs of both courts, and that there be judgment *in solido* against the plaintiff and *A. Matthews*, his surety in the injunction bond, for the amount of interest allowed.